15-4092-cv
Veleron Holding, B.V. v. Morgan Stanley, et al.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of June, two thousand seventeen.

PRESENT: DENNIS JACOBS,
         DEBRA ANN LIVINGSTON,
         RAYMOND J. LOHIER, JR.,
                    Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
VELERON HOLDING, B.V.,
         Plaintiff-Appellant,

         -v.-                                    15-4092-cv

MORGAN STANLEY, MORGAN STANLEY CAPITAL
SERVICES INCORPORATED, MORGAN STANLEY
& CO. INCORPORATED, and MORGAN STANLEY
& CO. LLC,
         Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - -X

---

\*    The Clerk of Court is respectfully directed to amend the official caption to conform with the above.

1

**FOR APPELLANT:** AARON H. MARKS, Ronald R. Rossi, Emilie B. Cooper; Kasowitz, Benson, Torres & Friedman LLP, New York, NY.

**FOR APPELLEES:** NEAL KUMAR KATYAL, Morgan L. Goodspeed; Hogan Lovells US LLP, Washington, DC.

Jonathan D. Polkes, Adam B. Banks; Weil, Gotshal & Manges LLP, New York, NY.

Appeal from the judgment of the United States District Court for the Southern District of New York (McMahon, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Plaintiff Veleron Holding, B.V., appeals from the judgment of the United States District Court for the Southern District of New York (McMahon, J.), entered pursuant to jury verdict with respect to a statutory claim and pursuant to a Rule 12(b)(6) dismissal with respect to a contract claim. We assume the parties' familiarity with the underlying facts, procedural history, and issues presented for review.

The plaintiff, Veleron, is a special purpose investment vehicle indirectly owned by an industrial conglomerate owned by Russian billionaire Oleg Deripaska. Veleron was formed to make a $1.5 billion dollar investment in a Canadian auto parts company called Magna. The investment went bad in the 2008 financial crisis.

In September 2007, the French bank BNP Paribas agreed to finance Veleron's Magna investment. Under a "Credit Agreement," Veleron borrowed $1.229 billion from BNP; and under a "Pledge Agreement," Veleron pledged to BNP the 20 million shares of Magna it purchased with that money (and with over $300 million of equity contributed by a Veleron parent) as collateral for the loan. Veleron pledged no other security, and no other entity guaranteed the loan, so BNP had no recourse in a default

2

except to liquidate the pledged collateral and pursue Veleron for any outstanding deficiency.

The defendants are several Morgan Stanley entities (collectively "Morgan Stanley"). Morgan Stanley was not a party to the Veleron-BNP agreements and never did any business directly with Veleron. BNP did, however, enter into an agreement with Morgan Stanley by which Morgan Stanley would be responsible for 8.1% of any loss to BNP if Veleron defaulted and the collateral fell short.[1] Morgan Stanley separately entered into an agreement to be BNP's disposal agent to liquidate the collateral if the need arose.

In its recitals, the "Agency Disposal Agreement" between BNP and Morgan Stanley describes the Credit Agreement and Pledge Agreement from which BNP's authority to seize and liquidate the collateral is derived; and it includes Morgan Stanley's acknowledgement that BNP, "in enforcing its security under the Pledge Agreement, is obligated to seek the best price available in the market for transactions of a similar size and nature at the time of sale, and Morgan Stanley agrees to use all reasonable [efforts] to comply with such terms." App. 1826. That agreement's operative provisions do not, however, make direct reference to Veleron.

The Credit Agreement allowed BNP to demand immediate payment if the price of Magna stock dropped beneath a specified margin between the outstanding debt and the value of the collateral. In September 2008, the value of Magna stock plummeted; on September 29, BNP made a $92.5 million margin call; the next day BNP increased the demand to $113.8 million.

Morgan Stanley attempted to cover its own exposure to further declines in the price of Magna shares (stemming from its 8.1% share of the credit risk) by shorting Magna stock on September 30 and October 1. Morgan Stanley avers that its short positions did not fully hedge against its risk, and it still stood to lose money.

---

[1] BNP entered into similar credit derivative transactions with several other major financial firms to hedge against its risk in the Veleron agreements.

3

On October 2, BNP sent Veleron an acceleration notice, warning that the collateral would be liquidated if Veleron did not pay immediately.  When Veleron did not pay, BNP directed Morgan Stanley to liquidate the pledged collateral.  On October 3, Morgan Stanley launched an "Accelerated Book Build" and sold all of the Magna stock over a single day, netting $748 million and leaving a deficiency of $79 million.  Veleron disputed the deficiency, arbitration ensued in London, and the dispute was settled for $25 million.

Veleron filed this suit against many parties; but all that remains for purposes of this appeal are claims against Morgan Stanley for breach of contract and for violations of § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and SEC Rule 10b-5.

Veleron alleges that Morgan Stanley breached the Agency Disposal Agreement by liquidating the Magna stock in an unreasonable or negligent way.  Although Veleron was not a party to that agreement, it argues that it was an intended third-party beneficiary.  The district court rejected that argument and dismissed the breach claim pursuant to Rule 12(b)(6).[2]

Veleron's securities fraud claim survived to jury trial. Veleron alleged that by taking a short position on Magna stock, Morgan Stanley traded on material nonpublic information in violation of a duty to Veleron, depressed the price of Magna stock, and thereby reduced the proceeds of liquidation and increased Veleron's deficiency by as much as $12.6 million.

Before trial, the parties submitted competing jury instructions.  Morgan Stanley's proposed instructions required Veleron to show that (1) Morgan Stanley owed Veleron a duty of trust and confidence; (2) Veleron conveyed material, nonpublic

---

[2] Veleron also alleged that Morgan Stanley breached the Pledge Agreement between BNP and Veleron--although Morgan Stanley was not a party to that agreement.  Veleron's theory was that BNP had delegated its decision-making to Morgan Stanley, effectively making Morgan Stanley its nominee, and that Morgan Stanley could therefore breach the agreement to which it was not a party.  The district court rejected that argument and Veleron does not raise it on appeal, abandoning the claim.

information to Morgan Stanley; (3) Morgan Stanley traded on that information in breach of its duty; (4) Morgan Stanley acted with scienter; and (5) Veleron suffered an economic loss proximately caused by Morgan Stanley's trading. Veleron's proposed instructions omitted the fourth and fifth of these elements. The district court agreed with Morgan Stanley's enumeration of elements and Veleron did not object.

During deliberations, a note from the jury asked whether Veleron "need[ed] to prove Morgan Stanley had an intent to specifically defraud Veleron?" App. 1749. After consulting the parties, the district court answered "yes," but "specifically in the sense that the material, nonpublic information must be misappropriated from Veleron." App. 1753-54. Shortly thereafter, the jury returned a unanimous verdict for Morgan Stanley, concluding that Morgan Stanley had not acted with scienter.

Veleron argues on appeal that (1) the district court erred by dismissing its breach of contract claim because it was a third-party beneficiary under the Agency Disposal Agreement, and (2) the jury instruction on scienter and the response to the jury's question were plainly erroneous.

We review de novo the district court's dismissal of a claim under Rule 12(b)(6). Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 51-52 (2d Cir. 2012).

We review for plain error jury instructions that went without timely objection. Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 152–53 (2d Cir. 2010).

**1.** Veleron was not a party to the Agency Disposal Agreement, and it therefore cannot enforce the agreement unless it was an intended third-party beneficiary. A purported third-party beneficiary must establish "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [the plaintiff's] benefit, and (3) that the benefit to [the plaintiff] is sufficiently immediate . . . to indicate the assumption by the contracting parties of a duty to compensate [the plaintiff] if the benefit is lost." Mandarin Trading Ltd. v. Wildenstein, 944 N.E. 2d 1104, 1110 (N.Y. 2011) (quotation marks removed).

5

Neither the text nor the surrounding circumstances of the Agency Disposal Agreement "clearly evidence" that Morgan Stanley and BNP intended to benefit Veleron. See Bayerische Landesbank, 692 F.3d at 52. The agreement describes the Credit Agreement and Pledge Agreement, and it identifies Veleron in that recitation; but references to Veleron are all by way of background. The agreement does not make clear reference to any duty owed to Veleron. The only obligation that might potentially qualify is the putative "best price" obligation in the Agency Disposal Agreement. However, this provision does not reference any specific duty in the agreements between Veleron and BNP, and, on appeal, Veleron was unable to clearly direct us to one. Nor does Veleron point to compelling evidence supporting third-party beneficiary status on the basis of the circumstances surrounding the Agency Disposal Agreement.

In the absence of such evidence, several provisions that do appear in the Agency Disposal Agreement operate to limit third-party beneficiary status. The agreement includes an express anti-assignment clause, which "suggests an intent to limit the obligation of the contract to the original parties[,]" Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 125 (2d Cir. 2005), an inurement clause ("This Agreement shall be binding upon and [i]nure to the benefit of each party to this Agreement . . . ."), and a merger clause specifying that all terms of the agreement are set out in the text of the agreement itself, which together tend to limit the class of potential beneficiaries. Absent contrary evidence, these clauses undermine any inference that BNP and Morgan Stanley intended to create a third-party beneficiary.

Therefore, we affirm the district court's dismissal of Veleron's third-party beneficiary contract claim.

**2.** Veleron challenges the jury instruction on scienter and the answer given to the jury's question about specific intent. Because Veleron did not object contemporaneously, review is deferential: to win on appeal, Veleron must show that the instructions were plainly erroneous. It does not sustain that burden.

6

The trial was conducted on a misappropriation theory of insider trading in violation of the Securities Exchange Act. To prove such a claim, a plaintiff must establish that the defendant possessed material, nonpublic information; that the defendant owed a duty to the plaintiff to keep such information confidential; that the defendant breached this duty by trading on the basis of that information; and that the defendant acted with scienter. United States v. Gansman, 657 F.3d 85, 90-91 & n.7 (2d Cir. 2011); see also Ernst & Ernst v. Hochfelder, 425 U.S. 185, 201-14 (1976) (discussing the scienter requirement in § 10(b) actions). Veleron presented evidence that BNP's margin calls and Veleron's inability to meet them with timely payment constituted the material nonpublic information on which Morgan Stanley traded when it shorted Magna. Morgan Stanley presented evidence and argument that it had no duty to Veleron to keep such information confidential, or, if it did, it did not know that it did and therefore acted without scienter.

Veleron points out that the Second Circuit applies a "knowing possession" standard to show breach: a defendant who trades while in knowing possession of material, nonpublic information presumptively trades "on the basis" of such information. United States v. Teicher, 987 F.2d 112, 120-21 (2d Cir. 1993). If a defendant trades while in knowing possession of inside information, Veleron contends, scienter is established, and the district court's instruction on scienter (in particular, its allowance of good faith) was therefore plainly erroneous. This analysis, however, collapses two distinct elements: scienter and breach of duty. Under the "knowing possession" standard, trading while in knowing possession of inside information is sufficient to establish that the trades were made on the basis of the inside information--and therefore that any duty to maintain that information in confidence (if there is one) was breached. But it does not establish awareness of a duty.

The district court's instruction on scienter allowed that "[g]ood faith on the part of Morgan Stanley is a complete defense to a contention that Morgan Stanley acted with a culpable state of mind." App. 1733. Since "[e]stablishing a culpable state of mind is part of proving the case," the district court instructed that "the burden is on Veleron to prove by a

7

preponderance of the evidence that Morgan Stanley acted with the requisite scienter" and "did not act in good faith."  App. 1733-34.

Veleron argues that the burden should have been placed on Morgan Stanley to prove good faith, but does so by assuming that good faith is an affirmative defense to be raised after the plaintiff has proved the elements for liability.  However, proof of scienter is part of the affirmative case.  Generally, it is "[a] mental state consisting in an intent to deceive, manipulate, or defraud."  Black's Law Dictionary (10th ed. 2014).  Good faith is scienter's opposite.  While the district court could have been clearer in articulating the nature of Veleron's burden, Veleron makes no persuasive argument that the district court's instruction was "obviously wrong in light of existing law." United States v. Youngs, 687 F.3d 56, 59 (2d Cir. 2012) (describing plain error in the criminal context).

Veleron fares no better with the district court's answer to the jury's question whether Veleron "need[ed] to prove Morgan Stanley had an intent to specifically defraud Veleron?"  App. 1749.  The district court answered that Veleron did need to prove such specific intent "specifically in the sense that the material, nonpublic information must be misappropriated from Veleron."  App. 1754.  Veleron fails to show that this answer was plainly erroneous.

Accordingly, and finding no merit in appellant's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK