17-327-cr
*United States v. Ocasio*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of October, two thousand eighteen.

Present:
> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> > *Circuit Judges*,
> LORNA G. SCHOFIELD,
> > *District Judge*.\*

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                17-327-cr

PABLO PLAZA (AKA PLAZA), JANINE PLAZA PIERCE
(AKA JAN), EDWIN NEGRON (AKA E), ANGELO
CRUZ (AKA KUBIAK), LANCE PLAZA PIERCE,
JEFFREY DAVIS, ZAVIER VAZQUEZ, PHILLIP BARNES
(AKA CREAM), MATILDA DELGADO, PABLO PLAZA
(AKA PAUL), JAMES DEAN KENDRICK (AKA JD),

> *Defendants,*

ANGELO OCASIO,

---

\* Judge Schofield, of the United States District Court for the Southern District of New York, sitting by designation.

                                            *Defendant-Appellant.*

_____

For Defendant-Appellant:            GWEN M. SCHOENFELD, ESQ., Law Office of Gwen M.
                                    Schoenfeld, LLC, New York, NY.

For Appellee:                       MONICA J. RICHARDS, Assistant United States Attorney,
                                    *for* James P. Kennedy, Jr., United States Attorney,
                                    United States Attorney's Office, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, Jr., *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Angelo Ocasio ("Ocasio") appeals from a judgment of the United States District Court for the Western District of New York entered on January 27, 2017, following a jury trial, convicting him of (1) engaging in a narcotics conspiracy, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(D), and § 846; and (2) possessing and discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and § 2. Ocasio was sentenced to life in prison for the narcotics conspiracy, pursuant to the murder cross-reference in the U.S. Sentencing Guidelines § 2D1.1(d), and to a consecutive sentence of ten years for the firearm discharge conviction. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I. Sufficiency of the Evidence**

Ocasio first claims that the evidence was insufficient to support the jury's finding that he discharged a firearm in furtherance of a drug crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii).[1]

_____

[1] Ocasio does not contest that the evidence was sufficient for a reasonable jury to find that he engaged in a narcotics conspiracy in violation of 21 U.S.C. §§ 841, 846 and that he possessed,

2

"A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011) (citing *United States v. Desena*, 287 F.3d 170, 176–77 (2d Cir. 2002)). We will not overturn a jury verdict if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). While the jury's inferences "must be based on evidence and must be reasonable," *United States v. Ceballos*, 340 F.3d 115, 125 (2d Cir. 2003), they may be based entirely on circumstantial evidence, and the government "is not required to preclude every reasonable hypothesis which is consistent with innocence." *United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008) (internal quotation marks omitted).

At trial, the government relied on evidence of a shooting at 137 Cameron Street in Rochester, New York, to support the discharge count.[2] It presented evidence that on July 25, 2009, several of Ocasio's co-conspirators attended a party at 176 Otis Street. There, Pablo Plaza ("Paul"), one of the leaders of the conspiracy, got into a fight with Terrance Ellison ("Ellison"), another drug dealer. Ellison stabbed Paul and also cut Damion Colabatistto ("Colabatistto"),

---

carried, or used a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). However, without the added element of discharge, a finding of possession/use/carrying carries a mandatory minimum of only five years, rather than ten. *See id.* § 924(c)(1)(A)(i).

[2] The government also pointed to evidence regarding the murder of Jose Troche, a participant in the narcotics conspiracy who was admittedly murdered for speaking to the police about James Dean Kendrick ("JD"), one of the conspiracy's leaders. Because the evidence of the Cameron Street shooting was more than sufficient to support the discharge conviction, we need not address this alternative theory. *See United States v. Rutkoske*, 506 F.3d 170, 176 (2d Cir. 2007).

3

who, like Ocasio, worked as an "enforcer" for the drug conspiracy. Paul was admitted to the emergency room for treatment of the stab wound. Subsequently, on the night of July 26, Ocasio and others went to Paul's house to check on him. Once there, members of the group decided to go look for Ellison. Eventually, Lance Plaza Pierce (Paul's brother), Ocasio, Colabatistto, and two others got in the car and drove to 137 Cameron Street, where they heard Ellison would be. Ocasio and Colabatistto each ultimately fired approximately five shots into the house, killing Meosha Harmon, a twenty-one-year-old mother of two, who was standing at the window.[3]

On appeal, Ocasio makes no argument that the evidence was insufficient to show that he discharged a firearm at 137 Cameron Street. Instead, he claims that "[t]he record [is] devoid of any evidence that the Cameron Street shooting . . . occurred during or in relation to a drug trafficking crime." Def.-App.'s Brief at 30. We disagree. "[T]he requirement in § 924(c)(1) that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001). Applying this standard in the context of discharge, there is more than sufficient evidence in the record here from which a rational jury could find that Ocasio's discharge of a firearm at 137 Cameron Street had the requisite nexus with his participation in the narcotics conspiracy (the predicate drug trafficking crime). *See United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (finding that while defendant contended he possessed gun in connection with "social matter" rather than in furtherance of a drug crime, jury could have found requisite nexus).

---

[3] The jury was presented with evidence of the shots fired by Colabatistto and Ocasio, but not the resulting death. Colabatistto was ultimately charged with and convicted of murder during the course of a § 924(c) violation, in violation of 18 U.S.C. § 924(j)(1), for the killing of Meosha Harmon. And as noted below, the district court relied on the Harmon murder to apply the murder cross-reference in sentencing Ocasio.

The government presented ample evidence of a number of facts relating to the Cameron Street shooting from which a jury could reasonably infer that the shooting was drug-related: (1) Ocasio was an enforcer or "do boy" for the drug trafficking conspiracy; (2) Ocasio and Ellison previously fought about Ellison's drug territory; (3) Ocasio fought with Ellison after the stabbing at Otis Street, with the two exchanging gunfire; (4) Ocasio went to Otis Street the morning after the stabbing with Colabatistto to accuse the host of the party of setting Paul up; (5) Ocasio and other alleged members of the conspiracy drove together to Cameron Street, where they had been told Ellison was; (6) Ocasio and Colabatistto, the other enforcer for the conspiracy, both fired approximately five shots each into the Cameron Street house; and (7) one of the guns used in the Cameron Street shooting was also used in the Troche murder, which was undoubtedly drug-related given that Troche was murdered for speaking to the police after he and several other members of the group were arrested for possessing heroin.

In addition to this evidence, itself sufficient to support the conviction, the prosecution called Special Agent Sean Martineck, who testified to, among other things, the importance of reputation among drug dealers. When asked what happens if a drug distribution group is deemed weak in the community, he replied: "They become targets. They become targets of home invaders: [sic] That want their product and their money. They also will start losing their drug customers. They may start losing their drug territory."[4] J.A. 1282. The jury could also have credited Lance Plaza Pierce's testimony that drug dealers need to keep up their reputation vis-à-vis other dealers to avoid looking weak and inferred from this observation by one of Ocasio's co-conspirators that Ocasio, as Paul and JD's "do boy," took part in the Cameron Street shooting in

---

[4] Ocasio argues that this testimony was improper, an argument we address below.

5

furtherance of his role in the narcotics conspiracy. *See Desena*, 287 F.3d at 177 ("[O]n appeal we must resolve all issues of credibility in favor of the jury's verdict" (internal quotation marks omitted)); *United States v. Jespersen*, 65 F.3d 993, 998 (2d Cir. 1995) ("No more need be said than that [the witness] so testified, and that we are required to resolve any issue regarding his credibility in the government's favor."). Thus, the evidence presented was more than sufficient to uphold Ocasio's § 924(c)(1)(A)(iii) discharge conviction.

## II. Admission of Special Agent Martineck's Testimony

Ocasio next argues that Special Agent Martineck's expert testimony was improperly admitted, and that the testimony was not harmless error given that this testimony provided "an expert-approved, drug-related motive" for the Cameron Street shooting.[5] Def.-App.'s Brief at 46. Under Federal Rule of Evidence ("FRE") 702, "the district court may admit expert testimony if the witness is qualified as an expert by knowledge, skill, experience, training, or education." *United States v. Mejia*, 545 F.3d 179, 193 (2d Cir. 2008) (internal quotation marks omitted). We review a district court's admission of expert testimony for abuse of discretion and will not find error unless the admission was "manifestly erroneous." *Id.* We discern no such error here.

We have held that "the operations of narcotics dealers are a proper subject for expert testimony under" FRE 702. *Id.* at 191 (quoting *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)). Ocasio argues that this is not the case here because Special Agent Martineck's testimony on the need to maintain one's reputation in the drug-dealing community concerned a

---

[5] Ocasio also challenges the district court's ruling admitting testimony by Kate Becker on the grounds that it was inadmissible hearsay and unduly prejudicial. Given that Ocasio did not object at trial to the testimony, however, we review its admission for plain error only. We discern no such error. *United States v. Marcus*, 560 U.S. 258, 262 (2010) (noting that reviewing courts do not find plain error where appellant's substantial rights were not affected).

subject matter not "beyond the ken of the average juror," *Castillo*, 924 F.2d at 1232, and was used improperly to bolster Lance Plaza Pierce's testimony in the absence of any direct evidence pointing to a drug-related motive for the Cameron Street shooting. We are not persuaded.

Ocasio relies on our decision in *United States v. Cruz*, 981 F.2d 659 (2d Cir. 1992), but *Cruz* does not support his position. We reaffirmed there "that the credibility of a fact-witness may not be bolstered by arguing that the witness's version of events is consistent with an expert's description of patterns of criminal conduct, *at least where the witness's version is not attacked as improbable or ambiguous evidence of such conduct*." 981 F.2d at 663 (emphasis added). Here, however, Ocasio consistently maintained at trial that the Cameron Street shooting was not drug related. Moreover, Ocasio repeatedly objected at trial when witnesses were questioned about what might have prompted the shooting, asserting contrary to his position here that this was properly a subject for *expert* testimony. In such circumstances, it was hardly improper for the government to introduce Special Agent Martineck's expert evidence. *See Headley v. Tilghman*, 53 F.3d 472, 475–76 (2d Cir. 1995) (concluding that when defendant admits his presence in drug distribution house but claims it was "happenstance," expert testimony can be used to explain his purported role in the transaction); *United States v. Tapia-Ortiz*, 23 F.3d 738, 741 (2d Cir. 1994) ("Because both defendants argued that the Government's version of events did not suggest criminal activity, the Government was justified in introducing expert testimony explaining that drug traffickers employ certain techniques . . . in order to avoid detection."); *United States v. Taylor*, 18 F.3d 55, 59–60 (2d Cir. 1994) (citing *Cruz* to approve expert testifying why a drug dealer would like a particular gun, noting that "[b]ecause in this case [the defendant] specifically disputed the government's claims that the gun found in his apartment was linked to his drug trafficking, admission of testimony contesting [his] claims was admissible").

Ocasio also argues that Martineck's testimony "creates an impermissible presumption that negates the 924(c) element . . . that requires proof that the firearm was possessed/used/carried/discharged during and in relation to a drug crime." Martineck testified on cross examination that "if you're a drug trafficker and you possess a firearm," the use of the firearm was almost certainly in furtherance of drug trafficking, and that possessing it for other reasons was possible only "in theory." While this testimony is troubling, we need not determine whether the district court erred by admitting it because any such error was harmless in light of, *inter alia*, the strength of other evidence that Defendant's discharge of the gun was in relation to the drug conspiracy. Furthermore, the invocations of Special Agent Martineck's testimony in the prosecution's summation were not nearly as frequent or potentially prejudicial as those in previous cases in which we have concluded that the erroneous admission of expert testimony required a conviction to be set aside. *See, e.g., Mejia*, 545 F.3d at 202; *Castillo*, 024 F.2d at 1234–35.

## III. Prosecutorial Misconduct

Ocasio next raises several prosecutorial misconduct claims: (1) that the prosecution misstated the record about the Becker testimony; (2) that it improperly elicited testimony about, and commented in summation on, Ocasio's post-*Miranda* warning silence; and (3) that the prosecution elicited false testimony from Investigator Cassidy and misrepresented his testimony in summation.[6] Because Ocasio's counsel did not object to these alleged errors, they are all

---

[6] Ocasio argues that even if these alleged errors do not on their own require retrial, these errors, considered in conjunction with and in light of the previous alleged errors, trigger retrial pursuant to the cumulative error doctrine. As in *United States v. Rahman*, 189 F.3d 88, 145 (2d Cir. 1999), however, most of the errors cited in support of the cumulative-unfairness claim here "were not errors at all." We see no error, viewed singly or in conjunction with others, that "cast[s] such a serious doubt on the fairness of the trial" as to warrant a second trial. *United States v. Al-Moayad*, 545 F.3d 139, 178 (2d Cir. 2008).

subject to plain error review. When deciding if there is plain error, we must find:

> that (1) there is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the appellant's substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*Marcus*, 560 U.S. at 262 (alteration in original) (citations omitted).

In general, a defendant bears a "substantial burden" in arguing that prosecutorial misconduct during summation requires reversal. *United States v. Millar*, 79 F.3d 338, 343 (2d Cir. 1996). "Flaws in the government's summation will require a new trial only in the rare case in which improper statements—viewed against the entire argument to the jury—can be said to have deprived the defendant of a fair trial." *United States v. Gansman*, 657 F.3d 85, 96 (2d Cir. 2011) (quoting *United States v. Caracappa*, 614 F.3d 30, 41 (2d Cir. 2010)). When looking at an inappropriate remark to decide whether it warrants a new trial, "we look to the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *Caracappa*, 614 F.3d at 41 (internal quotation marks omitted). Ocasio has identified no error requiring a retrial.

The alleged misstatement of Becker's testimony, which concerned a meeting at which the Troche murder was planned, was the government's assertion in summation that Becker testified that "when she came back she remember[ed] [Ocasio] being there." J.A. 1418 (Government Summation). Becker in fact testified that she remembered Ocasio being at her house for the meeting, but did not remember if he was in the room when she returned. Ocasio has not established, however, as he must on plain error review, that this single and fleeting misstatement of the record affected his substantial rights. The jury was repeatedly instructed that its recollection of the evidence controlled and that the arguments of counsel did not constitute

9

evidence. And given the ample evidence of Ocasio's participation in the narcotics conspiracy and the Cameron Street shooting, as well as other evidence connecting Ocasio to the Troche murder, including evidence that the gun used to kill Troche was one of the guns discharged at Cameron Street, there is no basis on which to conclude that this misstatement affected the outcome of the district court proceedings.

Ocasio raises two claims regarding the testimony elicited from Investigator Cassidy about Ocasio's post-arrest interrogation. First, he asserts that the testimony and the references to it in summation effectively commented on his post-*Miranda* silence. We disagree. *See United States v. Pitre*, 960 F.2d 1112, 1124–26 (2d Cir. 1992) (concluding it was not error for agent to testify that defendant "basically looked at the floor and looked at the ceiling" when defendant had answered previous questions, and finding no error in prosecution's summation comments on the same). After a pretrial suppression hearing, the district court rejected Ocasio's effort to suppress his post-arrest statements, concluding that the *Miranda* warnings he received were sufficient and that Ocasio effectively waived his *Miranda* rights. We see no error in this determination, nor any basis for concluding that Ocasio invoked his right to silence during the interrogation and was thereafter further interrogated. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) ("requir[ing] an accused who wants to invoke his or her right to remain silent to do so unambiguously"); *see also United States v. Plugh*, 648 F.3d 118, 124–27 (2d Cir. 2011). Next, Ocasio contends that the prosecution in summation misled the jury in its characterization of Investigator Cassidy's testimony by failing to mention that "when the officers returned following a break in the questioning" and again asked Ocasio about the gun used in the Troche murder, "Ocasio unequivocally denied killing anyone." Def.-App's Brief at 55. But as the government made clear in its rebuttal summation, it never contended that Ocasio murdered Troche: "[I]t's not

10

our contention that Angelo Ocasio pulled that trigger, it's not our contention that he was even there."   J.A. 1418 (Government's Rebuttal).   Ocasio's substantial rights were thus unaffected by any supposed failure on the government's part to repeat this portion of his post-arrest statement which, in any event, was in evidence.   *Cf. United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (noting that we "will not lightly infer" that remarks in a rebuttal argument "carry [their] most dangerous meaning" (internal quotation marks omitted)).

Ocasio finally asserts that the government knowingly elicited false testimony from Investigator Cassidy when the prosecutor posed a single question ("When you asked [Ocasio] about the Cameron Street shooting . . . , did he deny that he was involved in that shooting?") and Investigator Cassidy responded, "No."   Def.-App's Brief at 56.   This claim is without merit. Investigator Cassidy testified at trial that when he informed Ocasio that police already knew that the Cameron Street shooting was in retaliation for a fight in which Paul was injured, Ocasio acknowledged the fight—thus not disclaiming any involvement at all in the sequence of events. Moreover, in Cassidy's report, which was written up following his interview with Ocasio, there is no mention that Ocasio denied "involvement" in the Cameron Street shooting.   The report does note that when interrogators mentioned that the same gun was used in both the Cameron Street shooting and the Troche murder, Ocasio denied killing anyone.   But Investigator Cassidy testified to this denial at trial.   Even assuming, *arguendo*, that Cassidy's one-word answer to the single question on which Ocasio relies was potentially confusing, or even potentially inconsistent with Cassidy's suppression hearing testimony, we see no basis for concluding that the government knowingly elicited false testimony, nor that the testimony itself had any prejudicial effect on the jury.

11

**IV. Procedural Reasonableness of Ocasio's Narcotics Conspiracy Sentence**

Finally, Ocasio challenges his sentence pursuant to the U.S. Sentencing Guidelines. We review a district court's legal application of the Guidelines *de novo*. *See United States v. Wernick*, 691 F.3d 108, 113 (2d Cir. 2012). "[W]e review [the district court's] factual findings deferentially for clear error, . . . bearing in mind that the standard of proof at sentencing is a preponderance of the evidence." *United States v. Gaskin*, 364 F.3d 438, 464 (2d Cir. 2004) (internal citations omitted). "Further, a sentencing court, like a jury, may base its factfinding on circumstantial evidence and on reasonable inferences drawn therefrom." *Id.*

Ocasio makes two arguments about the reasonableness of his narcotics conspiracy sentence: (1) that application of the murder cross-reference was not warranted, and (2) that the drug calculations in the Presentence Report were incorrect. We need address only the first argument, however, because if the murder cross-reference was properly applied, Ocasio's offense level of 43 under the Sentencing Guidelines was correct, regardless of the proper disposition of his drug quantity challenge.[7] For the following reasons, we conclude that the murder cross-reference was appropriate.

Pursuant to U.S.S.G. § 1B1.3, the murder cross-reference only applies if the murder is relevant to the defendant's offense of conviction. *See, e.g.*, *United States v. Taylor*, 813 F.3d 1139, 1150 (8th Cir. 2016). As we have noted, "[o]ne criminal act does not become 'relevant' to a second act under the Guidelines by the bare fact of temporal overlap." *Wernick*, 691 F.3d at

---

[7] Ocasio did not object to the alleged procedural error regarding drug quantities, so our review is limited to plain error. If the murder cross-reference was appropriate here, any error as to drug quantity did not affect Ocasio's substantial rights, given that it had no impact on his Guidelines range. *See Marcus*, 560 U.S. at 262 (noting that reviewing courts do not find plain error where appellant's substantial rights were not affected).

The Guidelines refer to "relevant conduct" as "all acts . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1).

Ocasio was convicted of participating in a narcotics conspiracy, and he does not challenge the sufficiency of the evidence underlying that conviction. A defendant's conviction under § 924(c)(1)(A) requires that the defendant use a firearm "during and in relation to" or "in furtherance of" a drug trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A). As discussed above, the evidence supporting the discharge conviction—that Ocasio discharged a firearm during the Cameron Street shooting—was sufficient. The jury found beyond a reasonable doubt that Ocasio discharged a firearm in furtherance of a drug trafficking crime, i.e. his participation in the narcotics conspiracy. Therefore, the district court did not err in determining that the killing of Meosha Harmon at Cameron Street was "relevant conduct" to Ocasio's participation in the narcotics conspiracy. *See United States v. Reilly*, 76 F.3d 1271, 1276 (2d Cir. 1996) (noting that when the district court's account of the evidence "is plausible in light of the record viewed in its entirety," it should be upheld) (internal quotation marks omitted)).

\*\*\*

We have considered Ocasio's remaining arguments and, with one exception, we find them to be without merit. As to Ocasio's ineffective assistance of counsel claim, we decline to entertain that claim, leaving Ocasio to raise it in a petition pursuant to 28 U.S.C. § 2255. *See United States v. Oladimeji*, 463 F.3d 152, 154 (2d Cir. 2006) ("Where the record on appeal does not include the facts necessary to adjudicate a claim of ineffective assistance of counsel, our usual practice is not to consider the claim on the direct appeal, but to leave it to the defendant to raise the claim[] on a petition for habeas corpus . . . ."). Because of the complexity of this case, we

13

ask the district court to consider appointing counsel in any such § 2255 proceedings.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk