10-2974-cr
United States v. Wernick

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

August Term, 2011

(Argued: May 14, 2012      Decided: August 8, 2012)

Docket No. 10-2974-cr

———————————

UNITED STATES OF AMERICA,

*Appellee*,

— v. —

BRUCE WERNICK,
AKA Userfriendly, AKA BJGuy, AKA Alvin J Bart, AKA Bruce Wernick, AKA Bart,

*Defendant-Appellant.*

———————————

B e f o r e:

MCLAUGHLIN, SACK, and LYNCH, *Circuit Judges.*

———————————

Defendant-appellant Bruce Wernick was convicted by jury on charges arising from

his sexual abuse and attempted sexual abuse of children and teenagers and from his

receipt, possession, transmission, and reproduction of child pornography.  Wernick argues

that the district court erroneously calculated his Sentencing Guidelines range because it

included as "relevant conduct" within one offense of conviction certain uncharged

conduct directed at sex with young children.  We agree that these acts were not "relevant

conduct" within the meaning of the Sentencing Guidelines and remand for resentencing.

VACATED and REMANDED.

―――――――――

NORMAN TRABULUS, New York, NY, *for Defendant-Appellant*.

LARA TREINIS GATZ, Assistant United States Attorney (David C. James, Assistant United States Attorney, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.

―――――――――

GERARD E. LYNCH, *Circuit Judge*:

Defendant-appellant Bruce Wernick was convicted by jury in the United States

District Court for the Eastern District of New York (Denis R. Hurley, *Judge*) on five

counts, including Counts One and Two, receiving and distributing child pornography, 18

U.S.C. § 2252A(a)(2)(A); Count Three, reproducing child pornography for distribution by

computer, 18 U.S.C. § 2252A(a)(3)(A); Count Four, possessing materials containing

images of child pornography, 18 U.S.C. § 2252A(a)(5)(B); and Count Five, persuading,

inducing and enticing minors to engage in sexual activity, 18 U.S.C. § 2422(b).  Wernick

appeals his 360-month sentence, but not his conviction.  He argues principally that the

district court erred by considering certain sexual conduct directed at young children, not

charged in the indictment or proven at trial, as "relevant conduct" that increased his

Guidelines offense level with respect to Count Five.  Because we agree that the district

2

court erred in this way, we do not reach Wernick's alternative argument. We thus vacate the sentence and remand for resentencing.

We emphasize at the outset that the question presented is a technical one arising under the Sentencing Guidelines, which assign particular consequences to acts meeting a specific definition of "relevant conduct." We do not suggest in any way that the sexual exploitation of young children is not "relevant" in the ordinary sense to the district court's consideration of an appropriate sentence for offenses involving illegal sexual enticement of older minors and redistribution of child pornography. The contrary is manifestly true, and the conduct in question can, and undoubtedly will, be properly considered by the district court on remand in assessing the factors relevant to sentencing under 18 U.S.C. § 3553(a). We hold only that the court erred in considering the sexual acts with young children as effectively part of one offense of conviction (the enticement of teenagers), relevant to calculating the seriousness of *that* offense under the Guidelines, rather than as separate criminal acts to be considered at a different stage of the sentencing process, namely the court's ultimate plenary consideration under § 3553(a).

## BACKGROUND

I.      The Crimes

Because Wernick's appeal is directed at the calculation of his Guidelines level for Count Five, our account focuses on the conduct constituting that offense.

Wernick came to the attention of Suffolk County police in August 2001 through a child pornography investigation of another man, BM. Police discovered that BM not only

traded images, but had also recorded images of himself engaged in sexual activities with his own daughter. BM had also attempted to swap sexual access to his daughter for access to others' daughters.[1]

Based on information from BM and from his computer, which showed that BM had chatted and traded images with Wernick, Suffolk County police arrested Wernick on September 22, 2001. In cooperation with Suffolk police, Nassau County police executed a search warrant on Wernick's computer and hard drives on September 28, 2001. Wernick confessed to police that he had seen pornographic images created by BM, including images of BM's daughter. Police also analyzed Wernick's computer hard drives for images and chat records; many chat transcripts were saved by his chat program. The search uncovered 2300 still images and 300 videos of child pornography.

On several occasions, Wernick chatted with minor male teenagers online and proposed meeting for sex. At trial, the government was able to prove two episodes, one in which Wernick met a male 14-year-old online and eventually persuaded him to meet in person several times to engage in oral and anal sex, and another involving a male 16-year-old. Additionally, at sentencing, prosecutors proved instances of Wernick's sexual conduct with two male 15-year-olds and attempted sexual conduct with respect to another male teenager. We refer to these five individuals as the "teenagers."

---

[1] We identify BM only by initials to protect the identity of his daughter, a child victim in the case.

4

The government also introduced evidence at sentencing documenting Wernick's efforts to molest four young children, all age five or younger. These included BM's daughter and the daughter of a man in Westchester County. Wernick met these fathers and their daughters in person and may have had sexual contact with the daughters. The other two children were the sons of a man in West Virginia. Although Wernick and the father extensively discussed the possibility of Wernick's traveling to West Virginia to have sex with the children, Wernick did not actually travel there. We refer collectively to the three children other than BM's daughter as the "young children."[2]

II.     Sentencing Proceedings

One of the most complicated aspects of the Sentencing Guidelines is the set of rules governing the calculation of a sentence for individuals accused of multiple distinct or overlapping offenses. When a defendant has committed more than one crime, or when a single criminal act violates multiple criminal statutes, the Guidelines attempt to define an appropriate sentence level for multiple counts of conviction by, among other techniques, distinguishing between offenses that can be assimilated to a single crime and those that are best treated as distinct, independent episodes of criminal behavior. See, e.g., U.S.S.G. § 3D, introductory commentary; id. § 1A, introduction, policy statements 4(a), 4(e). These rules are referred to as "grouping rules."

---

[2] We do not include BM's daughter because, as discussed below, Wernick's acts against her were treated differently for sentencing purposes.

As relevant to this appeal, the presentence investigation report ("PSR") found that Wernick's offenses fell primarily into two groups for sentencing purposes. The first category, comprising Counts One through Four, related to Wernick's possession and distribution of child pornography. The parties agreed that under U.S.S.G. § 3D1.2(b) (2000),[3] those counts should be grouped. Wernick's conduct with respect to BM's daughter was counted as relevant conduct to those counts, because she was exploited in connection with the production of some of the child pornography that was the subject matter of those charges. This resulted in a five-level adjustment because the conduct was part of a pattern of activity involving the sexual exploitation of a minor under U.S.S.G. § 2G2.2(b)(4) (2000). The total adjusted offense level for those offenses was 37.

The second group comprised only Count Five, Wernick's conviction for "knowingly and intentionally persuad[ing], induc[ing] and entic[ing] individuals who had not yet attained the age of 18 years to engage in sexual activity for which a person could be charged with a criminal offense" in violation of 18 U.S.C. § 2422(b) (1998). The PSR included for the purposes of determining the offense level under this count acts with the two teenagers proven at trial. The PSR also included under this count acts with three

---

[3] The PSR noted that to avoid an ex post facto problem, it would apply the Guidelines offense levels in effect at the time of Wernick's crimes, which was determined to be November 2000. See Miller v. Florida, 482 U.S. 423, 430-33 (1987) (holding that sentencing court should apply sentencing guidelines in existence at the time of the offense); see also United States v. Adeniyi, 912 F.2d 615, 616 (2d Cir. 1990) (holding that sentencing court should apply Commission's policy statements in existence at the time of sentencing). We note, however, that none of the Guidelines relevant to this appeal have changed, other than in their numbering, since 2000.

6

additional teenagers, proven only at sentencing. Each of these carried an offense level of 25.[4]

The final PSR also included under Count Five the three completed or attempted acts of molestation against the young children.[5] The PSR determined that these were "relevant conduct" to Count Five under U.S.S.G. § 1B1.3 because the young children were actual or intended victims of the offense. Each of the acts with the young children carried an offense level of 35. Furthermore, the PSR determined that under the special instructions of § 2G1.1(d)(1), each of these uncharged acts should be treated as though it had been a separate count of conviction.

The PSR's unit analysis under U.S.S.G. § 3D1.4 yielded four total units: one for the grouped Counts One through Four, and three additional units, one for each of the acts with young children.[6] The four units added an additional four levels to the 37 levels for Counts One through Four. Thus, the combined offense level for sentencing purposes was 41.

---

[4] Wernick does not challenge the inclusion of the acts involving the other three teenagers as relevant conduct.

[5] BM's daughter was not included as an intended victim under Count Five because Wernick's acts related to her had already been counted as relevant conduct with respect to Counts One to Four, as describe above.

[6] The acts with the teenagers were disregarded for unit analysis purposes because their offense levels (25) were nine or more levels lower than the group with the highest offense level (37 for Counts One through Four). See U.S.S.G. § 3D1.4(c) (2000).

The recommended sentence range corresponding to a level 41 offense for a defendant who, like Wernick, had no prior criminal record, was 324 to 405 months. Following a sentencing hearing in which the court discussed the severity of Wernick's conduct, the court imposed a sentence of 360 months.

## DISCUSSION

I.    Standard of Review

We review a district court's sentencing decision for procedural and substantive reasonableness.  See United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). "A district court commits procedural error where it makes a mistake in its Guidelines calculation, does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact."  United States v. Hsu, 669 F.3d 112, 120 (2d Cir. 2012) (internal quotation marks and ellipses omitted); see also Gall v. United States, 552 U.S. 38, 51 (2007).  We review the district court's legal determinations de novo, see Hsu, 669 F.3d at 120, since interpretation of the Guidelines is a matter of law, see United States v. Legros, 529 F.3d 470, 474 (2d Cir. 2008).

We review errors not raised in the district court under the plain error standard of Rule 52(b), which states that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  Fed. R. Crim. P. 52(b).  Under the usual formulation,

> an appellate court may, in its discretion, correct an error not
> raised at trial only where the appellant demonstrates that (1)
> there is an error; (2) the error is clear or obvious, rather than

8

> subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

United States v. Marcus, 130 S. Ct. 2159, 2164 (2010) (internal quotation marks and brackets omitted). However, we have also held "that the plain error doctrine should not be applied stringently in the sentencing context, where the cost of correcting an unpreserved error is not as great as in the trial context." United States v. Gamez, 577 F.3d 394, 397 (2d Cir. 2009); see also United States v. Williams, 399 F.3d 450, 454-57 (2d Cir. 2005) (discussing doctrinal development of plain error standard in context of jury trials and absence of authority on unpreserved error in sentencing).

II.     "Relevant Conduct"

Wernick argues that his attempts to have sex with the young children were not relevant conduct to Count Five, and that on this basis the district court erred in its calculation of his advisory guidelines range. While a sentencing court is not required to follow the recommendations of the Sentencing Guidelines, see United States v. Booker, 543 U.S. 220 (2005), the Guidelines recommendation is a factor to be considered by the court in determining an appropriate sentencing. See 18 U.S.C. § 3553(a)(4). An error in calculating the Guidelines range is thus a procedural error that normally will require resentencing. See, e.g., United States v. Dorvee, 616 F.3d 174, 180-82 (2d Cir. 2010).

9

To analyze Wernick's claim, we turn first to the text of the relevant Guidelines. Guideline § 1B1.3(a)(1)(A) (2000), titled "Relevant Conduct (Factors that Determine the Guideline Range)," provides:

> Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . .
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

A separate provision that applies to this type of crime states:

> If the offense involved more than one victim, Chapter Three, Part D (Multiple Counts) shall be applied as if the promoting of prostitution or prohibited sexual conduct in respect to each victim had been contained in a separate count of conviction.

Id. § 2G1.1(d)(1) (2000). The commentary to that section makes clear that

> directs that if the relevant conduct of an offense of conviction includes the promoting of prostitution or prohibited sexual conduct in respect to more than one victim, whether specifically cited in the count of conviction, each such victim shall be treated as if contained in a separate count of conviction.

Id. § 2G1.1(d)(1), cmt. n.4 (2000).

We thus agree with the government that conduct against victims other than those charged in the indictment may constitute "relevant conduct" and, if such conduct

10

qualifies, should be treated for sentencing purposes as though it occurred in a separate count of conviction. The question, then, is whether Wernick's conduct involving the young children qualifies as "relevant conduct" under the Guidelines to Wernick's conviction for abusing the teenagers. That, in turn, depends on whether the offense against the young children "occurred during the commission of" the crimes against the teenagers, "in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A) (2000). We agree with Wernick that the offenses against the young children are not relevant conduct because these offenses did not "occur[] during the commission of" or "in preparation for" the crimes against the teenagers in the sense contemplated by the Guidelines. The government's arguments to the contrary are unpersuasive.

First, the government argues that the acts against the young children occurred "during" the offense against the teenagers. The government points out that Wernick's conduct involving the teenagers occurred during 1999 against one victim and from March through September of 2001 (an extended period of attempt, inducement, and persuasion) against another. Wernick also engaged in misconduct against all of the young children during this same time period.[7] The government argues that this temporal overlap is by itself sufficient to show that the conduct against the young children is "relevant."

[7] For example, in chats with BM, Wernick stated that he was planning to travel to West Virginia to abuse the boys on July 26, 2001; Wernick also traded child pornography with the boys' father from April to August of 2001 and received images of the children. Furthermore, in an August 2001 chat with BM, Wernick indicated that he intended to visit the Westchester father and daughter.

11

This argument cannot be correct. One criminal act does not become "relevant" to a second act under the Guidelines by the bare fact of temporal overlap. If a bank robber assaults a guard in the course of robbing a bank, the assaultive conduct occurs during the robbery and is "relevant conduct" that may be used to enhance the seriousness of the robbery offense for purposes of the Sentencing Guidelines because it is a part of the activity constituting the crime of conviction. But if a bank executive is engaged in embezzling money from her company from February to September, and she assaults a coworker at an office party in July, this does not become "relevant" to raise the offense level of the embezzlement merely because it occurred "during" the same period of time as the embezzlement. Without proof of a *connection* between the acts, the second event is literally a coincidence.

This conclusion would hold true even if the crimes were more similar. Suppose a bank robber spends months executing an elaborate scheme to rob Bank A, but opportunistically robs Bank B on a particular day during that period. Without more – for example, proof that robbing Bank B was done as practice ("in preparation for") for the robbery of Bank A – the crimes would be treated separately as unrelated acts. As we stated in United States v. Ahders, a case cited by both sides:

> The words "relevant conduct" suggest [that] more is required
> than mere temporal proximity, as the other conduct must be
> "relevant" and it must occur "during the commission of the
> offense of conviction, in preparation for that offense, or in the
> course of attempting to avoid detection or responsibility for
> that offense."

12

622 F.3d 115, 122 (2d Cir. 2010), quoting U.S.S.G. § 1B1.3(a)(1)(A). In sum, the Guidelines do not define "relevant" as "during" in a purely temporal sense. To qualify as "relevant conduct," the conduct must occur in the course of commission of the offense of conviction.

Ahders is instructive and consistent with our view. In that case, the defendant pled guilty to a charge of producing child pornography, and he appealed his 580-month sentence. Id. at 117. On appeal, we addressed two relevant conduct issues. First, Ahders had sexually abused his stepson, EM, and recorded the abuse; he also molested two other children, VB and BB, at a sleepover and recorded images of those acts. Id. Ahders argued that the sentencing court had improperly considered the acts against BB and VB, which were not charged in the indictment, as conduct relevant to his abuse of his stepson, which was the sole charge. Id. at 119. We rejected that argument, finding that

> [t]he conduct involving BB and VB occurred "during the commission of the offense of conviction," as it occurred during the period that Ahders was producing pornographic images and film of EM. Ahders exploited and abused all three children, including abusing EM and BB together, during Mother's Day weekend in 2007 when VB and BB were staying with EM for a sleepover. During this weekend, Ahders produced pornographic images of all three children. Clearly, then, the abuse of VB and BB was "relevant conduct," and it was properly considered by the district court.

Id. at 120. The opinion goes on to state that Ahders ordered BB and EM to touch each other's genitals. Id. As this recitation makes clear, Ahders molested charged and non-charged victims together as part of the same conduct. He produced images of all three at

13

once, and he had access to VB and BB because they were staying with EM. The non-charged conduct thus occurred "during" the charged conduct under § 1B1.3 not simply because of its temporal overlap, but because it was closely related as part of the same course of abusive conduct *and* occurred at the same time.

Second, Ahders challenged the district court's determination that his possession of sadomasochistic images of children was "relevant conduct" to his abuse. We remanded for further factfinding, instructing the district court to consider, among other factors, whether Ahders had used the images as models in the creation of the images of EM; whether Ahders had shown the images to EM to "teach" him what to do; and whether Ahders had been aroused by the images and this induced him to abuse EM. Id. at 122-23. Only such stronger connections would support a finding that the images were relevant to the abuse; the fact that Ahders possessed the sadomasochistic images at the same time that he was engaged in abusing the children was not by itself sufficient. Id. at 123. This holding similarly exemplifies the rule that mere contemporaneity of uncharged conduct is not sufficient to render the uncharged conduct "relevant" to the offense of conviction.[8]

---

[8] The government's only other citation is to an unpublished Seventh Circuit decision, United States v. Craig, 420 F. App'x 605, 606 (7th Cir. 2011) (citing Ahders). That court agreed that any attempt to challenge the inclusion of several uncharged victims as "relevant conduct" under § 1B1.3 would be futile because "they all took place during the same time frame *and as part of the same scheme*." Id. (emphasis added). From the few facts stated in the case, it appears that the Craig decision is consistent with our own view that activities occurring as part of *the same course of conduct* are relevant; the case does not rely on mere temporal overlap.

14

In light of the weakness of the argument from pure temporal overlap, the government next argues that Wernick's conduct against the young children bore some relationship to the crimes against the teenagers by pointing out that Wernick bragged about his exploits with various adolescent boys in an effort to arouse or entice BM, and that this was part of his efforts to obtain sexual access to BM's daughter. However, this argument, to the extent accurate, proves the converse of what is necessary. Uncharged acts must be relevant to "the offense of conviction" under U.S.S.G. § 1B1.3. Here, the "offense of conviction" is Count Five, the acts against the teenagers, the offense for which the jury convicted Wernick and for which the offense level is being calculated. That the acts with the teenagers may have been relevant (as preparation) to crimes committed against BM's daughter does not make the converse true, as the offense against her played no role, as preparation or otherwise, in the offense of conviction. Still less does it render crimes against the *other* young children (which is the conduct the district court relied on to enhance the offense level of Count Five) relevant to the acts against the teenagers. The government has not offered any evidence that Wernick, for example, simultaneously engaged in sexual activities with teenagers and young children, or that he was able to use the fact of his pursuit of sex with children to persuade the teenagers to have sex with him. The acts against the young children, while similarly deplorable and criminal, are not "relevant conduct" to the acts against the teenagers in the sense contemplated by the Guidelines.

15

Finally, the government argues that the conduct is actually part of the offense of conviction because it fits within the charging language of Count Five, which alleged that

> between December 1, 1999 and September 28, 2001, . . .
> [Wernick] did knowingly and intentionally persuade, induced
> and entice individuals who had not attained the age of 18
> years to engage in sexual activity for which a person could be
> charged with a criminal offense . . . .

This argument too misapprehends the scope of "relevant conduct." Perhaps the government *could have* proven at trial that Wernick's conduct against the young children violated Count Five. But in fact, it did not introduce evidence of these acts at trial, and relied solely on the two instances of abuse of teenaged boys outlined above to prove Count Five. At sentencing, the question is whether the abuse of the young children is relevant conduct to what the government *did* prove, that is to "the offense of conviction," U.S.S.G. § 1B1.3, which is the abuse of the two teenagers.

We thus conclude that the district court's inclusion of the acts against the young children as "relevant conduct" in calculating the offense level for Count Five was error.

III.    Plain Error

Because we agree with the government that Wernick did not raise the "relevant conduct" argument below, the question remains whether the error we have identified constitutes plain error. We conclude that it does. Even under the now-advisory Sentencing Guidelines regime, an unobjected-to miscalculation of a defendant's Guidelines range constitutes procedural error under Cavera, thereby satisfying the first plain error prong (that there is error). See, e.g., Dorvee, 616 F.3d at 180-81. Here, the

16

district court certainly erred, satisfying the first prong. Although the Guidelines are intricate, we also find the error – a misreading of a frequently applied Guideline – sufficiently clear to satisfy the second prong.

An unobjected-to error in Guidelines calculation may satisfy the third prong (that the error affects substantial rights) and fourth prong (that failure to notice the error would call into question the fairness or public integrity of proceedings) of the traditional test because a "district court's miscalculation of the Guidelines sentencing range carrie[s] serious consequences for the defendant." Id. at 181-82; see also Gamez, 577 F.3d at 400-01. The Guidelines range, after all, "serves as the district court's 'starting point' in selecting a sentence," Dorvee, 616 F.3d at 182, quoting Kimbrough v. United States, 552 U.S. 85, 108 (2007), and when a sentencing court miscalculates the Guidelines, we "cannot be sure that the court has adequately considered the § 3553(a) factors," id., its ultimate duty at sentencing. Here, the district court's misreading of the Guidelines increased Wernick's guidelines offense level from 37 to 41; at his criminal history category of I, this corresponds to a substantial increase from a sentencing range of 210 to 262 months to one of 324 to 405 months. While the district court might have selected the same sentence regardless of the guideline range, in light of the significant difference between a sentence that falls squarely within the erroneously calculated Guidelines range and one that exceeds the correct Guidelines range, the error had a potentially serious impact on the sentence imposed.

17

We are mindful that a remand for resentencing, while not costless, does not invoke the same difficulties as a remand for retrial does, see, e.g., United States v. Villafuerte, 502 F.3d 204, 208 (2d Cir. 2007), and this fact weighs in our assessment of the fourth prong, cf. Williams, 399 F.3d at 454-57 (discussing relative costs of plain error review for trial and sentencing errors). Given the dramatic impact on the Guidelines calculation, with the resulting possibility that the error resulted in the defendant's being imprisoned for a longer time, and the relatively low cost of correcting the miscalculation, we believe that failure to notice the error would adversely affect the public perception of the fairness of judicial proceedings. Having found plain error, we remand the case for resentencing.[9]

IV.    Resentencing

We are aware that our discussion of this issue has an air of the academic and technical, and does not appear to engage with the seriousness and obvious materiality of Wernick's persistent pattern of abuse of minors. That, however, is the nature of guideline sentencing, which attempts to reduce the human dimensions of sentencing to a series of verbal formulas and mathematical calculations. Such calculations by their nature cannot perfectly capture the infinite variety of wrongdoing that comes before the courts.

Fortunately, such technical analysis is only a part, and not the whole, of our sentencing law. Even under the prior "mandatory" guideline regime, a sentencing court had the power to "depart" from the guideline sentence in the presence of an "aggravating

---

[9] Because we agree with Wernick that the acts involving the young children are not "relevant conduct," we do not reach his alternative argument that those acts were not properly grouped.

or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1996). Under the present "advisory" guideline system, in selecting an appropriate sentence, the guideline recommendation is but one factor to be considered in selecting an appropriate sentence, see 18 U.S.C. § 3553(a), and we have frequently emphasized that a sentencing court has discretion to consider a broad range of information bearing on "the history and characteristics of the defendant," id. § 3553(a)(1). See, e.g., United States v. Gilliard, 671 F.3d 255, 260-61 (2d Cir. 2012) (in affirming upward departure from Guidelines range, noting that district court "properly considered," inter alia, defendant's "extensive criminal history and failed attempts to comply with terms of his supervised release[,] . . . the facts and circumstances of his crime[,] . . . and his high likelihood of recidivism and the need to deter him from committing future crimes"); see also United States v. Jones, 531 F.3d 163, 172 (2d Cir. 2008) ("[D]istrict courts enjoy considerable discretion in identifying the grounds that can justify a non-Guidelines sentence.").

Wernick does not and cannot argue that the sentence imposed fell outside the permissible *statutory* range for his crimes.[10] On remand, the district court remains

---

[10] Under the statutes of conviction effective at the time of Wernick's crimes, Wernick's conviction under Count Five carries a statutory range of zero to 15 years of imprisonment. See 18 U.S.C. § 2422(b) (1998). Because Wernick had no prior criminal history, his convictions under Counts One through Three each carry a statutory range of zero to 15 years, see 18 U.S.C. § 2252A(b)(1) (1998), and his conviction under Count Four carries a statutory range of zero to 5 years, see 18 U.S.C. § 2252A(b)(2) (1998). Given the possibilities of consecutive sentences, the 30-year sentence imposed by the district court falls well below the maximum sentence permitted by statute.

entitled to exercise its discretion in selecting "a sentence [that is] sufficient, but not greater than necessary" to achieve the purposes of sentencing and that complies with the statutory limits. 18 U.S.C. § 3553(a). Notwithstanding the Sentencing Commission's assessment, reflected in the correctly applied Guidelines, of the seriousness of the offense, in selecting an appropriate sentence the district court may make its own evaluation of the characteristics of the defendant, and the need of the sentence to punish, deter, and protect the public. Our conclusion that Wernick's acts against young children are not technically "relevant conduct" to the specific offense charged in Count Five does not imply that those acts are not highly relevant (in a non-technical sense) to the district court's evaluation.

Wernick does not attack the substantive reasonableness of the sentence, and our holding that the district court erred in applying the Guidelines should not be taken as reflecting any view on the sentence appropriate to Wernick's loathsome acts. In any event, it is not ours to say: The task of determining the proper sentence rests in the substantial discretion of the district court. See Cavera, 550 F.3d at 188-89.[11]

---

[11] With the Court's permission, the briefs and appendices in this case were filed under seal, to protect the identities of the child victims. After careful review of the briefs, we believe that this important concern can be accommodated, with less impact on the public's right of access to court records, by the filing of redacted, rather than fully sealed, briefs. The parties are therefore ordered to file, on or before September 7, 2012, redacted public copies of the briefs. The redactions should eliminate all identifying information relating to the child victims and any other information from which their identities may be ascertained. The appendices, as well as the original unredacted briefs, will remain sealed. Cf. Stern v. Trustees of Columbia Univ., 131 F.3d 305, 307 (2d Cir. 1997) (finding "no basis for the sealing of the entire record" in a case in which redaction would suffice).

**CONCLUSION**

Because we conclude that the district court erred in its Guidelines calculation, we VACATE the sentence and REMAND the case for resentencing consistent with this opinion.