# United States Court of Appeals
# For the Second Circuit

August Term 2021

Argued: December 8, 2021
Decided: December 7, 2023

No. 20-4162

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

ROBERT J. CHAIRES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of New York
No. 18-cr-21-1, Frederick J. Scullin, *Judge.*

Before: CARNEY, SULLIVAN, and MENASHI, *Circuit Judges.*

Robert J. Chaires challenges the procedural and substantive reasonableness of the 120-month sentence imposed by the district court (Scullin, *J.*) following his plea of guilty to two counts of unlawfully distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). On appeal, Chaires principally argues that the district court erred when it found that Chaires's two prior state-court narcotics

convictions categorically qualified as predicate offenses for the career offender enhancement under U.S.S.G. § 4B1.1.  Based on this Court's intervening decision in *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023), it is now clear that the district court erred when it sentenced Chaires as a career offender under U.S.S.G. § 4B1.1.  As the government concedes, the district court's career offender determination was premised on Chaires's two prior state-court convictions brought under a state provision that is categorically broader than the federal predicate definition in section 4B1.2(b).  Those convictions thus cannot serve as section 4B1.1 predicate offenses and the district court therefore plainly erred when it enhanced Chaires's Guidelines range on that basis.  Accordingly, we **REMAND** the case to the district court for resentencing.  Judge Sullivan concurs in a separate opinion.

REMANDED.

ROBERT JOSEPH BOYLE, Esq., New York, NY, *for Defendant-Appellant*.

CARINA H. SCHOENBERGER (Michael S. Barnett, Rajit S. Dosanjh, *on the brief*), Assistant United States Attorneys, *for* CARLA B. FREEDMAN, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

PER CURIAM:

Robert J. Chaires challenges the procedural and substantive reasonableness of the 120-month sentence imposed by the district court (Scullin, *J.*) following his plea of guilty to two counts of unlawfully distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  On appeal, Chaires principally argues that the district court erred when it found that Chaires's two prior state-court narcotics

2

convictions categorically qualified as predicate offenses for the career offender enhancement under U.S.S.G. § 4B1.1. Based on this Court's intervening decision in *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023), it is now clear that the district court erred when it sentenced Chaires as a career offender under U.S.S.G. § 4B1.1. As the government concedes, the district court's career offender determination was premised on Chaires's two prior state-court convictions brought under a state provision that is categorically broader than the federal predicate definition in section 4B1.2(b). Those convictions thus cannot serve as predicate offenses to section 4B1.1 and the district court therefore plainly erred when it enhanced Chaires's Guidelines range on that basis. Accordingly, we remand the case for resentencing.

## I. BACKGROUND

As relevant here, Chaires has two prior state-court drug convictions. In 2003, he pleaded guilty to the criminal sale of a controlled substance in the third degree under N.Y. Penal Law § 220.39(1) and was ultimately sentenced to eight years' incarceration.[1] In 2008, while he was still on parole for the 2003 conviction,

---

[1] Chaires was initially sentenced to four to twelve years' incarceration but that sentence was vacated in 2012 after the state legislature reduced the statutory maximum for section 220.39(1). Chaires was then resentenced to his ultimate term of eight years' incarceration.

Chaires was arrested for selling powder cocaine and ultimately pleaded guilty to attempting to violate section 220.39(1). Though the court sentenced Chaires to four years' incarceration, he was given an alternative sentence in the form of a three-month drug treatment bootcamp, which he completed in November 2008. About a year after his release from bootcamp, however, Chaires's parole was revoked after a routine search uncovered marijuana and ammunition in his residence. In lieu of a parole hold, Chaires was diverted to a drug treatment facility and then released back into supervision in April 2010. Chaires was ultimately discharged from parole in 2011.

Seven years later, in 2018, Chaires was again arrested for narcotics trafficking, this time by federal agents after he sold approximately eighty grams of crack cocaine to a confidential source. A federal grand jury later indicted Chaires on two counts of distributing crack cocaine in violation of 21 U.S.C. §§ 841(a) and 841 b(1)(B).

On August 31, 2020, Chaires pleaded guilty to both counts. That same day, Chaires filed a written objection to his potential classification as a career offender under section 4B1.1 of the United States Sentencing Guidelines, asserting without elaboration that his 2008 conviction for attempted trafficking did not qualify as a

4

predicate "controlled substance offense" under the career offender enhancement. Chaires mounted another objection in his December 2, 2020 sentencing memorandum, arguing that the 2008 attempt conviction could not serve as a career offender predicate because it was merely an inchoate offense.

The district court sentenced Chaires on December 7, 2020. During that hearing, Chaires's counsel again argued that Chaires's 2008 conviction was for an inchoate offense that could not serve as a career offender predicate. The district court disagreed and found that Chaires qualified as a career offender based on his 2003 and 2008 convictions under section 220.39(1), which yielded an advisory Guidelines range of 188 to 235 months' imprisonment. Nonetheless, the district court ultimately imposed a below-Guidelines sentence of 120 months' imprisonment followed by four years of supervised release.

Chaires timely appealed and we heard argument on December 8, 2021. Our decision was delayed, however, while we waited our turn in a queue of cases involving the categorical approach to narcotics predicates under the Guidelines' career offender enhancement. *See* U.S.S.G. § 4B1.1. We ultimately decided two of those cases on grounds that go to the heart of the sentencing challenges that Chaires now raises. The first, *United States v. Gibson*, 55 F.4th 153 (2d Cir. 2022),

*adhered to on reh'g*, 60 F.4th 720 (2d Cir. 2023), affirmed the district court's finding that N.Y.P.L § 220.39(1) is categorically broader than its federal analog and therefore cannot trigger the career offender enhancement under section 4B1.1. After we directed the parties to submit supplemental briefing on whether *Gibson* was a precedential holding that bound us here, another panel of this Court decided *Minter*, 80 F.4th at 406. At issue there was whether N.Y.P.L. § 220.39(1) – the same provision as here – was categorically broader than the federal drug schedules. Given that the state provision covers certain cocaine isomers that federal law does not, we found that it was. *Id.* at 410, 413 (citing the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 802). As a result, we concluded that the defendant's convictions under section 220.39(1) could not serve as predicate offenses under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). *Minter*, 80 F.4th at 407.

The parties have now filed supplemental briefs addressing the significance of *Gibson* and *Minter*, and while they continue to dispute whether *Gibson* is a precedential opinion that is binding on future panels, both agree that Chaires's state-law convictions are not predicate narcotics offenses to section 4B1.1 after *Minter*.

## II. STANDARD OF REVIEW

We review criminal sentences for reasonableness. *United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008). As part of that review, we must "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *See Gall v. United States*, 552 U.S. 38, 39 (2007). To that end, we review the district court's Guidelines calculation *de novo*, including whether the district court properly determined that the career offender enhancement applies. *See United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008) (citing U.S.S.G. § 4B1.2).

Because the defendant here failed to preserve his sentencing challenge, however, we will reverse only if we find plain error. Under that standard, we consider whether "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020).

## III. DISCUSSION

Although Chaires raises a host of challenges to his sentence on appeal, we need only decide whether Chaires's prior state-law convictions under N.Y.P.L

7

§ 220.39(1) qualify as predicate offenses for the career offender enhancement under section 4B1.1. On that score, we agree with the parties that neither of Chaires's prior state convictions is a valid predicate after *Minter*. Because we also find this was plain error, we must remand for resentencing.

## A. The Categorical Approach

The Sentencing Guidelines prescribe enhanced penalties for certain defendants with significant criminal histories. In particular, section 4B1.1 – the career offender enhancement – directs that defendants are subject to a higher Guidelines range when they have at least two prior felony convictions for "a controlled substance offense." U.S.S.G. § 4B1.1. According to the Guidelines, "[t]he term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b).

In deciding whether a state conviction qualifies as a "controlled substance offense," courts must compare the state statute underlying that conviction to the federal definition in section 4B1.2(b). Since 2018, we have applied the "categorical

8

approach" to that comparison, examining the elements of the defendant's conviction and asking whether those elements criminalize any conduct that section 4B1.2(b) does not cover. *See United States v. Townsend*, 897 F.3d 66, 72 (2d Cir. 2018).

We perform this categorical approach in two steps. *See Stuckey v. United States*, 878 F.3d 62, 67 (2d Cir. 2017). First, we "identify the 'elements of the statute forming the basis of the defendant's [prior state] conviction.'" *Id.* (quoting *United States v. Descamps*, 570 U.S. 254, 257 (2013)).[2] "In doing so, we examine what is the minimum criminal conduct necessary for conviction under that particular state statute." *Id.* (alterations and internal quotation marks omitted).

Once we have identified the elements underlying the defendant's prior state conviction, we "compare" those elements with the conduct that constitutes a "controlled substance offense" under section 4B1.2(b) of the career offender enhancement. *See Townsend*, 897 F.3d at 73. If the state provision "sweeps more

---

[2] This first step will often be straightforward, since the statute of conviction will list the elements of only a single crime. However, certain statutes list the elements of multiple alternative offenses in a single provision. When a statute has such a "divisible" structure, we modify the first step by "look[ing] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Stuckey*, 878 F.3d at 67. Here, we need not determine whether section 220.39(1) is divisible because the government has "conce[ded]" that it is not. Govt' Supp. Br. at 5. We therefore assume without deciding that section 220.39(1) is indivisible and apply the traditional categorical approach.

broadly" – meaning it punishes some conduct that is not prohibited by federal "controlled substance offense[s]" – then no conviction under that provision can serve as a predicate controlled substance offense for the section 4B1.1 career offender enhancement. *See id.* at 74.

This categorical comparison often turns on whether the state offense criminalizes even a single substance that federal law does not. In *Townsend*, we held that the term "controlled substance" in section 4B1.2(b) refers "exclusively to those drugs listed under . . . the [federal] CSA." *See id.* at 71. This means that, when we apply the categorical approach to "controlled substance offense[s]" in section 4B1.2(b), we ask whether the defendant's prior state conviction was under a statute that covers any substance not listed in the CSA. For instance, *Townsend* itself held that a New York state conviction under N.Y.P.L. § 220.31 could not serve as a section 4B1.1 predicate because that state provision criminalized at least one substance – "human chorionic gonadotropin" – not covered by the CSA. *See id.* Under the categorical approach, it does not matter if the defendant's conviction was in fact premised on a substance that was clearly prohibited by *both* the state and federal narcotics laws, such as heroin or cocaine; the categorical approach

10

looks exclusively at statutory elements and does not inquire into the "particular controlled substance" underlying the defendant's prior state conviction. *Id.*

**B.  Chaires's Prior Convictions Under Section 220.39(1)**

At sentencing, the district court found that Chaires was a career offender because he had two prior convictions under N.Y.P.L. § 220.39(1).  In light of *Minter*, neither of those convictions can serve as a career offender predicate here.

Because the parties stipulate that N.Y.P.L § 220.39(1) is not divisible, *see supra* note 2, we need only compare the elements of section 220.39(1) with section 4B1.2(b) to determine if section 220.39(1) covers any conduct that is not a "controlled substance offense."  Section 220.39(1)'s text reveals four elements:  the defendant must (1) knowingly and (2) unlawfully (3) sell (4) a "narcotic drug" as defined in N.Y.P.L. § 220.00(7).  *Cf. Townsend*, 897 F.3d at 74 (identifying the elements of the analogous offense enumerated in N.Y.P.L. § 220.31).  Under our recent holding in *Minter*, it is clear that section 220.39(1) sweeps more broadly than its federal analog and cannot serve as a "controlled substance offense."  As even the government concedes here, *Minter* interpreted the term "narcotic drug" in section 220.39(1) and found that it covered several cocaine isomers not listed in the CSA.  *See Minter*, 80 F.4th at 410 (concluding that New York law criminalizes all cocaine isomers while federal law exempts "optical and geometric" isomers).

11

Given that section 220.39(1) covers some conduct – the sale of these cocaine isomers – that the CSA does not, Chaires's prior state convictions under 220.39(1) cannot serve as predicates to the career offender enhancement under our Circuit's categorical approach.

While Chaires did not preserve a *Minter*-style argument before the district court, the clarity of *Minter's* holding itself establishes plain error and compels us to remand for resentencing. *See Miller*, 954 F.3d at 557–78 (reciting the four prongs for plain error). First, as already established, the district court erred when it calculated Chaires's Guidelines range based on his (mistaken) status as a career offender. *See United States v. Wernick*, 691 F.3d 108, 112 (2d Cir. 2012) (holding that such miscalculations satisfy the "error" prong). Second, this error was also plain, because *Minter* has now established as the law of the Circuit that section 220.39(1) covers certain cocaine isomers that the federal CSA does not. *See United States v. Garcia*, 587 F.3d 509, 520 (2d Cir. 2009) (holding that errors are plain when they are "clear" at the "time of appeal," even if not so at the time of sentencing). This error also meets the final two prongs of the plain error analysis, since the miscalculation of Chaires's Guidelines range had "a potentially serious impact on the sentence imposed." *Wernick*, 691 F.3d at 117 (quoting *United States v. Dorvee*, 616 F.3d 174,

12

181–82 (2d Cir. 2010)) (holding that such miscalculations satisfy both the third and fourth prongs).  Indeed, without the career offender enhancement, it appears that Chaires's Guidelines range would have dropped from 188 to 135 months to only 60 to 71 months[3] – well below the 120-month sentence imposed by the district court.[4]

## IV.  CONCLUSION

For these reasons, we **REMAND** the case for resentencing.

---

[3] Based on the Presentence Investigation Report, to which neither party has objected, Chaires's total offense level would have been 23 and his criminal history category would have been III.  The Sentencing Guidelines table prescribed a range of 57 to 71 months while Chaires's federal conviction carried a mandatory minimum of five years.  As a result, Chaires's Guidelines range apparently would have been 60 to 71 months.

[4] Of course, on remand the district court is not bound by the advisory Guidelines range and may impose whatever sentence it deems necessary to meet the sentencing objectives of 18 U.S.C. § 3553(a).  *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019); *United States v. Sindima*, 488 F.3d 81, 87 (2d Cir. 2007).

13

RICHARD J. SULLIVAN, *Circuit Judge*, concurring:

I agree with the majority that, based on our Circuit's binding precedents, Chaires's prior narcotics convictions cannot serve as predicates to the career offender enhancement and that we therefore must remand for resentencing. I write separately to question the wisdom of those precedents and explain why, in my view, the "controlled substance offense" predicate to U.S.S.G. § 4B1.1 – the career offender enhancement – does not call for a categorical comparison of drug schedules.

Although the Supreme Court has held that the categorical approach applies to "violent felony" predicates under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. 924(e), it did so based on ACCA's unique text, statutory history, and practical implications. *See Taylor v. United States*, 495 U.S. 575 (1990). The Supreme Court has never extended the categorical approach to the "controlled substance offense" predicate of the career offender enhancement defined in section 4B1.2(b), which shares none of ACCA's salient features. What's more, the plain text of section 4B1.2(b) indicates that the Sentencing Commission prescribed a state-dependent approach that does not turn on the content of federal drug schedules or their exact match with a state-law analog. Indeed, six of our sister circuits have

already concluded as much, holding that section 4B1.2(b) calls for a state-dependent approach rather than a categorical one. *See United States v. Jones*, 81 F.4th 591, 599 n.5 (6th Cir. 2023) (noting the 6-3 circuit split over this issue, with our Circuit in the minority). Though our Circuit rejected the state-dependent approach in *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), I continue to believe it is the correct reading of section 4B1.2(b).

## I.

In *United States v. Taylor*, the Supreme Court held that courts must apply the "categorical approach" to determine whether a prior state conviction qualifies as a "burglary" predicate under ACCA. *Taylor*, 495 U.S. at 602. In so holding, the Court also considered and rejected two other tests: the factual approach and the state-dependent approach. Under the factual approach, a court would examine the facts underlying the defendant's conviction and determine whether "the defendant's actual conduct would fit the generic definition of burglary." *Id.* at 601. So, for instance, a prior state conviction where a defendant burglarized a boat would not count as a predicate, since the generic definition of burglary is limited to buildings or structures. *See id.* at 599. Under the state-dependent approach, meanwhile, a defendant's prior conviction for burglary under state law would

2

always qualify as a predicate, no matter how each "state chooses to define it." *Id.* at 579 (internal quotation marks omitted). Unlike the factual approach, then, a state conviction for burglarizing a boat would qualify, simply because that conduct was an offense under the state's burglary law.

In rejecting these two approaches, the Court gave three principal reasons why ACCA's violent felony clause called for the categorical approach. First, ACCA's text defined violent felony predicates based on their "element[s]." 18 U.S.C. § 924(e)(2)(B)(i) (defining a violent felony, in relevant part, as one that "has as an element . . . the use of physical force"). The Court interpreted this as a directive from Congress that sentencing courts must look to "the elements of the statute of conviction, not to the facts of each defendant's conduct." *Taylor*, 495 U.S. at 601.

Second, ACCA's amendment and legislative history suggested that Congress had always intended for a categorical approach to apply to violent felony predicates. The Court pointed to various bill proposals and floor statements that suggested that all burglaries should categorically qualify as violent felonies, even if a particular defendant had not in fact engaged in violence when committing their offense. *Id.* at 582–89. The Court also observed that ACCA was originally

3

enacted with statutory definitions of generic burglary and robbery (the original two ACCA predicates).[1] *Id.* at 589–90. To the Court, this demonstrated that Congress must have wanted a categorical standard (rather than a state-dependent approach) where the "enhancement provision [would] be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary' by the laws of the State of conviction." *Id.* at 588–89.

Third, the Court observed that the categorical approach would yield fewer "practical difficulties" than the other two options. *Id.* at 601. A state-dependent approach would lead to "odd results," the Court thought, because the same conduct would be a predicate in one state yet not one in another that defined burglary differently. *Id.* at 591. The factual approach, on the other hand, would seemingly require the parties to relitigate anew the facts of the state conviction, an arduous process that could even involve dueling witnesses. *Id.* at 601–02.

---

[1] Burglary, for instance, was defined as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." *Taylor*, 495 U.S. at 581 (quoting Armed Career Criminal Act of 1984, Pub. L. 98-473, ch. 18, 98 Stat. 2185, 18 U.S.C. § 1202(a) (Supp. III 1982) (repealed 1986)). Though Congress removed those definitions a few years later, the Court still determined that the deletion may have been "inadvertent" and that the initial inclusion signaled an overall preference for uniform definitions. *Id.* at 590.

4

## II.

In *United States v. Townsend*, our Court extended *Taylor*'s categorical approach to the "controlled substance offense" predicate to the career offender enhancement. 897 F.3d at 75 (citing U.S.S.G. § 4B1.2(b)). In particular, we instructed courts to apply section 4B1.2(b) by comparing the state drug conviction to the federal CSA to determine whether the state offense necessarily involved a federally controlled substance. *See id.* at 74.

In my view, that was wrong. The career offender enhancement lacks the features that *Taylor* found critical when it prescribed the categorical approach for ACCA's violent felony predicates. More than that, several features of the career offender enhancement – chiefly its plain text – point instead to a state-dependent approach for controlled substance offenses.

### A.

As always, we start with the text. In relevant part, section 4B1.2(b) defines a "controlled substance offense" as "an offense under federal or state law . . . that prohibits . . . distribution . . . of a controlled substance." U.S.S.G. § 4B1.2(b). On my read, nothing in that text points toward *Taylor* or its categorical approach. Unlike ACCA's violent felony clause, section 4B1.2(b) says nothing about "element[s]." *Cf.* 18 U.S.C. § 924(e)(2)(B)(i) (defining an offense that "has as an

5

*element* the use, attempted use, or threatened use of physical force against the person of another" (emphasis added)).  In fact, section 4B1.2(b) stands in stark contrast to section 4B1.2(a), in which the Commission specifically referred to "element[s]" when defining the "crime of violence" predicate to the career offender enhancement.  § 4B1.2(a)(1) ("The term 'crime of violence' means any offense under federal or state law . . . that . . . has as an *element* the use, attempted use, or threatened use of physical force against the person of another." (emphasis added)).  Obviously, the Commission knew how to define predicate offenses in a manner that (like the statute at issue in *Taylor*) would trigger the categorical approach, yet chose not to do so when defining "controlled substance offense."

If anything, section 4B1.2(b)'s text affirmatively supports a state-dependent approach.  For starters, section 4B1.2(b) defines "controlled substance offense" in relevant part to include "an offense under federal *or state law* . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance."  *Id.* § 4B1.2(b) (emphasis added).  By using the disjunctive "or," the Commission directed that "state law" offenses qualify as predicates on equal footing with federal ones, even if "federal" law differs in its scope.  Meanwhile, the plain meaning of "controlled substance" is a "drug[] regulated by law."  *United*

6

*States v. Lewis*, 58 F.4th 764, 769 (3d Cir. 2023); *see also Controlled substance*, The Random House Dictionary of the English Language (2d ed. 1987) ("any of a category of behavior-altering or addictive drugs, such as heroin or cocaine, whose possession and use are restricted by law"). Taking these two points together, I think section 4B1.2(b) plainly says that state offenses for trafficking drugs can qualify as predicates, no matter the content of federal law.

To be sure, our Circuit held otherwise in *Townsend*, concluding that a state offense can be a "controlled substance offense" only if the state offense categorically matches the federal CSA. S*ee Townsend*, 897 F.3d at 66, 68, 71. We first reasoned, under the *Jerome* presumption, that federal statutes presumptively do not rely on state law unless the legislature "plainly indicates otherwise." *Id.* at 71 (citing *Jerome v. United States*, 318 U.S. 101, 104 (1943)). On that basis, we concluded that section 4B1.2(b) was cross-referencing the federal CSA – and not incorporating state law – when it employed the term "controlled substance."[2]

But like several of our sister circuits, I find it obvious that the Commission plainly indicated "otherwise," *id.*, when it explicitly said that offenses under either "federal *or* state law" may count as predicates under section 4B1.2. *Jones*, 81 F.4th

---

[2] Though we normally apply that presumption to federal statutes, *Townsend* found that it applied to the Guidelines, too, because they also have the force of law. *See Townsend*, 897 F.3d at 71.

at 598 (emphasis added); *see also United States v. Ward*, 972 F.3d 364, 374 (4th Cir. 2020) (explaining that "section 4B1.2(b) disjunctively refers us to state law in defining the offense" so the presumption in favor of federal law "is overcome here"). Put simply, if the Commission had wanted to limit "controlled substance offense[s]" to those that mirror federal law, it knew full well how to do so. After all, the Commission cross-referenced federal statutes in the clause right above "controlled substance offense," where section 4B1.2(a) defines its "crime of violence" predicate based on two federal provisions. *See* U.S.S.G. § 4B1.2(a)(2) (citing 26 U.S.C. § 5845(a) and 18 U.S.C. § 841(c)). This is also true of other Guidelines provisions, which cross-reference federal statutes when prescribing sentences for drug-trafficking offenses. *See Ward*, 972 F.3d at 373 (citing U.S.S.G. § 2D1.1, which in turn cross-references a host of federal narcotics provisions in 21 U.S.C. §§ 841 and 960).

What is more, the Commission actually *deleted* such a cross-reference to the CSA that originally appeared in section 4B1.2. When the Commission first promulgated the Guidelines, it defined "controlled substance offense" based on federal law – that is, "an offense identified in 21 U.S.C. §§ 841, 952(a), 955, 955a, 959; §§ 405B and 416 of the Controlled Substance Act as amended in 1986, and

8

similar offenses." U.S.S.G. § 4B1.2(2) (1987). But just two years later, the Commission deleted those cross-references to the CSA, leaving section 4B1.2 in its substantially current form: "an offense under a federal or state law prohibiting the manufacture, import, export, or distribution of a controlled substance." *United States v. Ruth*, 966 F.3d 642, 651–52 (4th Cir. 2020) (quoting U.S.S.G. § 4B1.2(2) (1989)). In sharp contrast to ACCA in *Taylor*, section 4B1.2(b)'s amendment history points away from a categorical approach and toward a state-dependent one.

**B.**

Finally, I see no practical reasons for – and many against – extending the *Taylor* categorical approach to section 4B1.2(b). *Cf. Taylor*, 495 U.S. at 601 (identifying several practical reasons for applying the categorical approach to ACCA violent felonies). First, applying the categorical approach to the career offender enhancement would likely "undermine[]" national uniformity, not promote it. *See United States v. Jones*, 15 F.4th 1288, 1296 (10th Cir. 2021), *cert. denied*, 143 S. Ct 268 (2022). Indeed, under the categorical approach, sentencing courts must disregard convictions from certain states while fully enforcing the same sort of convictions from other states. *See id.* By contrast, a state-dependent approach would create a more uniform rule where courts treat all state convictions for controlled substances the same way.

9

In addition, a state-dependent approach would be easier to administer than a categorical one. Under a state-dependent rubric, the sentencing court's task is fairly straightforward: examine the defendant's prior conviction and assess whether it was an offense under state (or federal) law that prohibits the trafficking of a substance. This can generally be resolved with a brief look at the rap sheet and the state statute of conviction. *See, e.g.*, *Ward*, 972 F.3d at 371 (concluding that a Virginia statute so qualified simply by looking at its text).

Things are not so simple under the categorical approach. To decide whether a state drug offense is a categorical match with the CSA, courts must embark on a needlessly convoluted journey. They must scour case law and court dockets to find state court decisions and pattern jury instructions that indicate whether a statute is divisible or indivisible. *Cf. Harbin v. Sessions*, 860 F.3d 58, 66–68 (2d Cir. 2017) (applying the categorical approach to assess indivisibility in an immigration case). They must sift through decades-old state and federal drug codes to compare the state schedule in place when the defendant was convicted with the federal schedule at the time that the defendant committed his federal offense or was sentenced for it. *See United States v. Gibson*, 55 F.4th 153, 162 (2d Cir. 2022) (holding that the categorical approach requires comparing the state drug schedule at the

10

time of the defendant's state conviction with the federal drug schedule at the time of either the defendant's federal offense or sentencing). And they must parse those drug schedules chemical-by-chemical to determine which obscure substances they do or do not cover. *See United States v. Minter*, 80 F.4th 406, 410–11 (2d Cir. 2023) (analyzing whether New York regulates only "optical or geometric isomer[s]" of cocaine or also "constitutional" or "positional" isomers). Perhaps not surprisingly, even the circuits that originally agreed to apply the categorical approach have split over how exactly to do so. *See, e.g., Lewis*, 58 F.4th at 771 (detailing the circuit split over the "time-of-sentencing" versus "time-of-predicate" categorical approach); *Cucalon v. Barr*, 958 F.3d 245, 253 (4th Cir. 2020) (surveying the different conclusions on whether drug statutes in various states are divisible or indivisible).

## C.

Significantly, recent Supreme Court decisions counsel by analogy against using a categorical approach with respect to section 4B1.2(b). Though the Court endorsed the categorical approach in *Taylor*, it has cautioned that the categorical approach does not apply to every recidivism provision, especially when doing so would lead to illogical results. In *Nijhawan v. Holder*, the Court addressed whether the categorical approach applied to an immigration statute that required removal

11

of aliens who had been convicted of "an offense that . . . involves fraud or deceit in which the loss to the victim . . . exceeds $10,000." 557 U.S. 29, 38 (2009) (quoting 8 U.S.C. § 1101(a)(43)(M)(i)). As the Court explained, the categorical approach would make little sense here because few federal or state offenses specifically criminalize fraud causing loss over $10,000 as an element of the offense. *See id.* at 39–40. Since only a handful of prior convictions would categorically qualify as predicates, the Court concluded that Congress did not "intend" the removal provision "to be applied categorically." *Id.* at 40.

The Court enlisted this same reasoning in *United States v. Hayes*, where it held that the categorical approach did not apply to domestic-violence predicates for 18 U.S.C. § 922(g), the felon-in-possession statute. 555 U.S. 415, 426 (2009). That provision bars persons from possessing a firearm if they have been convicted of a violent offense committed against specific family members, like current or former spouses, parents, co-parents, and so on. *See* 18 U.S.C. § 921(a)(33)(A)(ii) (defining the predicates to section 922(g)). As in *Nijhawan*, the Court found it "highly improbable" that Congress intended to impose a categorical restriction, since there were relatively few statutes that specifically criminalized violence

against those sorts of family members as an element of the offense. *Hayes*, 555 U.S. at 427.

Applying this same logic to section 4B1.2(b), I see no reason to think that the Commission intended for the categorical approach to apply to "controlled substance offense[s]," since there are relatively few state laws that exactly mirror the list of controlled substances identified in the CSA. Under *Townsend*, even the slightest difference in chemical composition would serve to disqualify a prior state conviction. As a result, convictions in New York for trafficking cocaine and heroin (not to mention fentanyl and more than 100 other opioids and opiates) no longer count as predicates, simply because New York law covers "constitutional isomers" of cocaine that are not listed in the CSA. *See Minter*, 80 F.4th at 410–11 (citing N.Y. Pub. Health L. § 3306 and N.Y.P.L. § 220.39(1), which in tandem treat both heroin and cocaine as "narcotic drug[s]"). Similarly, a methamphetamine distribution conviction in California would not be considered a predicate for the career offender enhancement merely because California's definition of methamphetamine includes "optical and geometric isomers of methamphetamine" that are not specifically mentioned in the CSA. *See Lorenzo v. Whitaker*, 752 F. App'x 482, 485 (9th Cir. 2019). The categorical approach likewise

13

disqualifies marijuana convictions in Arizona or Massachusetts that occurred before Congress decriminalized hemp in 2018, since that descheduling narrowed the federal definition of marijuana and rendered the CSA narrower than its state counterparts. *See United States v. Bautista*, 989 F.3d 698, 702–04 (9th Cir. 2021) (Arizona marijuana convictions); *United States v. Abdulaziz*, 998 F.3d 519, 531 (1st Cir. 2021) (Massachusetts marijuana convictions).

Perhaps more troubling, now that Congress has descheduled hemp, it could be argued that no *federal* marijuana conviction from before 2018 can ever serve as a career offender predicate under the categorical approach. As discussed above, section 4B1.2(b) also includes federal offenses as predicates, so long as they prohibit a "controlled substance" (among other things). § 4B1.2(b). But when Congress removed hemp from the CSA in 2018, the CSA became "categorically broader" than its pre-2018 iteration. *See United States v. Batiz-Torres*, 562 F. Supp. 3d 28, 33 (D. Ariz. 2021). Because we look to the current CSA when performing the categorical approach,[3] a rigid application of the categorical approach would mean that no pre-2018 federal conviction for trafficking marijuana would count as a "controlled substance offense" predicate for a federal defendant sentenced

---

[3] The First and Ninth Circuits also apply this so-called "time-of-sentencing" categorical approach that compares the statute of conviction to the current CSA. *See Lewis*, 58 F.4th at 764.

14

today. It would not matter that the defendant was in fact convicted for trafficking marijuana as opposed to hemp; so long as this prior conviction was under a drug schedule (the pre-2018 CSA) that included a substance (hemp) that the current CSA does not, the prior conviction would not meet the requirements of the categorical approach. Indeed, a district court (from another circuit) has already concluded that a defendant was not a career offender simply because Congress decided to remove hemp from the federal schedules. *See id.* at 33.[4]

Candidly, I cannot believe that the Commission intended for section 4B1.2(b) to reach such illogical results. Given section 4B1.2(b)'s plain text and amendment history, the only plausible reading of the provision is that it calls for a state-dependent approach that does not rely on what substances are (or were) federally controlled.

## III.

Even though the career offender guideline affects hundreds if not thousands

---

[4] That holding assumes that CSA provisions like 21 U.S.C. § 841 are divisible by drug type and that the modified categorical approach applies. *See United States v. Davis*, No. 19-cr-40006, 2020 WL 998877, at *5 (S.D. Ill. Mar. 2, 2020) (finding the CSA divisible). But even that is still an open question, as the circuits have apparently not yet weighed in on the subject. *See id.* (citing no circuit precedent). Remarkably, if the CSA is found to be *indivisible*, then the categorical approach would lead to even more illogical results: the 2018 hemp descheduling would mean that the current CSA is categorically broader than the pre-2018 iteration and that no pre-2018 federal CSA conviction *of any kind* could ever serve as a "controlled substance offense" predicate.

of criminal defendants each year, the Supreme Court has exhibited little interest in resolving the circuit split over the categorical approach. Just last year, the Supreme Court denied *certiorari* in a case that sought to resolve the split. *See Guerrant v. United States*, 142 S. Ct. 640 (2022). In a statement respecting that denial of *certiorari*, Justice Sotomayor acknowledged that the issue had divided the courts of appeal but lamented that "[i]t is the responsibility of the Sentencing Commission," not the Court, to clarify the correct approach to section 4B1.2(b). *Id.* at 640–41 (Sotomayor, *J.*, joined by Barrett, *J.*).

Despite some early signs of movement, the Commission has not yet answered Justice Sotomayor's call to action. In February 2023, the Commission proposed two options that would resolve the circuit split over the career offender enhancement: one that would prescribe a categorical approach, and another that would direct a state-dependent inquiry. *See* U.S. Sent'g Comm'n, Proposed Amendments to the Sentencing Guidelines 68–69 (Feb. 2, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230201_RF-proposed.pdf [https://perma.cc/7N25-BG9P]. Regrettably, the Commission did not follow through with either proposal. In a public meeting in April 2023, the Chair of the Sentencing Commission, Judge

16

Carlton W. Reeves, announced that the Commission was not prepared to adopt either approach and would instead "further debate the issue over the next year." U.S. Sent'g Comm'n, Public Meeting 24 (Apr. 5, 2023) (statement of Hon. Carlton W. Reeves, Chairman, U.S. Sent'g Comm'n), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf [https://perma.cc/4K7T-WBZS]. In the meantime, district courts – and criminal defendants – must proceed as best they can under a confusing and contradictory patchwork of authorities across the circuits.

*       *       *

Given the Commission's indecision and the Supreme Court's reluctance, I think it imperative that the courts of appeal converge on the best reading of the career offender enhancement. To my mind, there can be little doubt which of the two options is that best reading. The state-dependent approach is firmly grounded in section 4B1.2(b)'s text and will permit a relatively straightforward inquiry. The categorical approach lacks any foothold in that text, has proven to be hopelessly difficult to administer, and illogically disqualifies untold numbers of state and federal narcotics convictions from serving as predicate offenses – even though

17

those convictions were in fact premised on a federally controlled substance.  For these reasons, I continue to believe that section 4B1.2(b) calls for a state-dependent approach to controlled substance offenses, as six of our sister circuits have already held.  *See Jones*, 81 F.4th at 599 n.5.  I therefore urge the Second Circuit to correct this error through an *en banc* or mini *en banc* proceeding that would overrule our currently binding precedent in *Townsend* and bring us in line with the majority of circuits to have addressed this issue.